IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, ) | CR 07-1714-TUC-DCB(HCE) |
| Plaintiff, ) | **REPORT AND RECOMMENDATION** |
| vs. ) | |
| James Schmit, ) | |
| Defendant. ) | |

Pending before the Court is Defendant's Motion To Sever Counts/Motion *In Limine* To Preclude Evidence (Doc. 196). The Government filed a Response To Defendant's Motion To Sever Counts/Motion *In Limine* To Preclude Evidence (Doc. 203). Defendant's Motion came on for hearing on October 14, 2010.

After consideration of Defendant's Motion, the Government's Response, and argument of counsel, the Magistrate Judge recommends that the District Court deny Defendant's Motion To Sever Counts/Motion *In Limine* To Preclude Evidence (Doc. 196).

**I. PROCEDURAL AND FACTUAL BACKGROUND**

**A.   Charge**

Defendant is charged with: from a time unknown to on or about May 11, 2005, in the District of Arizona, knowingly transporting and shipping in interstate and foreign commerce, by any means, including by computer and by mail, visual depictions of minors engaged in sexually explicit conduct, in violation of 18 U.S.C. §§ 2252(a)(1), (b)(1) and 2256(2) (Counts

1 through 9); from a time unknown to on or about May 11, 2005, in the District of Arizona, knowingly transporting in interstate commerce for the purpose of sale and distribution a computer hard disk drive and computer storage media containing visual depictions related to sadistic and masochistic conduct, bestiality, child pornography, and other obscene materials, in violation of 18 U.S.C.§1465 (Counts10 through 24); and on or about May 11. 2005, in the District of Arizona, knowingly possessing visual depictions that had been mailed, shipped and transported in interstate and foreign commerce, by knowingly possessing a computer hard disk drive and computer storage media which contained images and videos that were part of a collection of visual depictions of minors engaging in sexually explicit conduct, in violation of 18 U.S.C. §§2252(a)(4)(B),(b)(2) and 2256(2) (Counts 25 through 33)[1]. Moreover, a Forfeiture Allegation is made that as a result of the foregoing offenses, Defendant forfeits any all interest in any and all matters which contain visual depictions used to commit and promote the commission of Counts 1 through 33.

### B.     Factual Background

Federal Bureau of Investigation (FBI) agents in Minnesota investigated and discovered that credit cards issued in the name of Defendant were used on January 25, June 29, and July 1, 2003, to purchase subscriptions to child pornography web-sites. The Defendant was identified through his credit card account and e-mail address used to purchase the subscriptions. The investigation also determined that Defendant moved from Minnesota in March 2004 to Tucson, Arizona. Consequently, the investigation of Defendant was transferred to FBI in Tucson.

The FBI in Tucson endeavored to determine if Defendant was employed in Arizona. Inquiry was made of the Department of Economic Security to determine if Defendant was so employed. The inquiry revealed that he was not. The FBI surveilled Defendant's residence for a week to otherwise monitor his movement.

---

[1]The visual depictions of child pornography alleged in Counts 25 through 33 are the same visual depictions alleged in Counts 1 through 9.

1  FBI agents were of the opinion that there was not then probable cause sufficient to
2  support application for a search warrant. Consequently, a "knock and talk" was carried out
3  to gain entry into Defendant's residence to obtain consent to examine any computers and
4  media in Defendant's possession that might contain images of child pornography.

5  On April 6, 2005 at 6:50 a.m., FBI agents John Czapko and Brian Brisbine arrived at
6  Defendant's residence to conduct a "knock and talk." Defendant responded to Agent
7  Czapko's knock at the front door. Upon opening the door, Agents Czapko and Brisbine
8  presented credentials identifying themselves and explained they were there to investigate the
9  possible identity theft of Defendant's credit cards to subscribe child pornography. They
10 asked for permission to enter Defendant's residence and Defendant let them in.

11 Once in the residence, Agents Czapko and Brisbine asked Defendant if he possessed
12 any computers and other media, and if so, would he consent to examination of such for
13 images of child pornography. Defendant gave verbal as well as written consent but would
14 not agree to his computers and other media being taken from his residence. FBI Agent John
15 Owen was called in to conduct the examination. Defendant selected three computers that, in
16 his opinion, were the most frequently used by him to access the internet and he also provided
17 a number of cases containing numerous CDs and DVDs. Agent Owen randomly selected
18 some CDs and began his examination of the computers and CDs. He found nothing during
19 this examination explicitly indicative of child pornography. Permission was requested of
20 Defendant to "mirror", i.e., copy, the hard drive of one of the three computers that Defendant
21 had selected. Defendant consented.

22 Once the computer was mirrored, the agents left. As a consequence of a full computer
23 forensics examination of the mirrored hard drive, images of child pornography were found.
24 Also found were the names and internet addresses of child pornography web-sites where
25 Defendant had purchased subscriptions. Consequently, FBI agents obtained a search warrant
26 for Defendant's residence and such was served on May 11, 2005. Nine computer hard drives,
27 four laptop computers, eight loose hard drives, and 1,423 CDs and DVDs were seized.
28 A full computer forensics examination of the computer hard drives, laptops, CDs and

1 DVDs was conducted. Discovered therein were 17,993 images of child pornography on hard
2 drives. On 44 CDs were found 8,759 images of child pornography, co-mingled in some
3 instances, with obscene images. The child pornography and obscene images were
4 determined to have been saved on the CDs prior to Defendant's move to Tucson, Arizona in
5 March, 2004. Thus, Counts 1 through 9 for Transportation and Shipping of Child
6 Pornography and Counts 10 through 24 for Transportation of Obscene material, in the
7 indictment.

## II. ANALYSIS

### A.  Defendant's Motion To Sever/Motion *In Limine* To Preclude Evidence

The gravamen of Defendant's argument for severance is fourfold: (1) Counts 1 through 9 and 25 through 33 pertain to pornographic images of children, while Counts 10 to 24 pertain to obscene images of consenting adults subject to a First Amendment "national contemporary community standard" defense; (2) defense of the obscenity counts will be protracted and expensive to the Court and parties; (3) trial of the obscenity counts will inflame the prejudices of the jury and make conviction on the child pornography counts likely; and (4) the specific images portrayed in the obscenity counts are not relevant to the specific images portrayed in the child pornography counts.

#### 1.  Joinder

Rule 8 of the Federal Rules of Criminal Procedure permits joinder of offenses in the same indictment. Fed.R.Crim.P. 8(a). Joinder of offenses promotes judicial economy. *Zafiro v. United States*, 506 U.S. 534, 537 (1993)("Joint trials 'play a vital role in the criminal justice system.' They promote efficiency and 'serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.'" (internal citations omitted)); *United States v. Lopez*, 477 F.3d 1110, 1116 (9th Cir. 2007)(joinder to promote efficient administration of justice). A trial court looks to the face of the indictment for a nexus between the counts sought to be severed. *United States v. Jawara*, 474 F.3d 565, 573 (9th Cir. 2007)(joinder improper because nothing in the indictment suggested a nexus between document fraud count and marriage fraud conspiracy count).

1    Joinder of offenses is permitted under Rule 8(a) if the offenses are: (1) of the same or
2 similar character, *United States v. Rousseau*, 257 F.3d 925, 932 (9th Cir. 2001)(joinder of
3 offenses proper because multiple felon-in-possession charges were of same or similar
4 character); (2) based on the same act or transaction, *Lopez*, 477 F.3d at 1117 (joinder of drug
5 trafficking and firearms offense proper because both related to defendant's drug trafficking
6 operation and had significant evidence overlap); or (3) based on acts or transactions that are
7 connected with, or constitute parts of a common scheme or plan, *United States v. Mitchell*,
8 502 F.3d 931, 963-64 (9th Cir. 2007)(joinder of robbery and car-jacking offenses proper
9 because car-jacking provided getaway vehicle for robbery).

10                    **a.    Same or Similar Character**

11    In the instant case, the images of obscenity and images of child pornography are both
12 prohibited under law. The adult or the child in the image, consensually or not, are both
13 exploited for commercial gain. In pursuit of commercial gain, the adult or the child in the
14 image are both objectified, i.e., presented as an object. The objectification of the adult or the
15 child in the image, willing or not, are both designed to arouse or appeal to a person's prurient
16 interests.

17                    **b.    Same Act or Transaction**

18    The link of evidence against Defendant in the prosecution for child pornography and
19 the prosecution for obscene material overlaps and is essentially the same. The investigation
20 of Defendant began in Minnesota for the subscription to child pornography web-sites with
21 use of Defendant's credit cards. The investigation was transferred to Tucson, Arizona once
22 he moved here in March of 2004. On April 6, 2005. a "knock and talk" was conducted at
23 Defendant's residence. Therein, were numerous computers and computer media. Obtained
24 from a single "mirrored" hard-drive, after a full computer forensic examination was
25 conducted, were images of child pornography containing the names and inter-net addresses
26 of the web-sites Defendant had previously subscribed. Based upon this information, a search
27 warrant was obtained and executed at Defendant's residence on May 11, 2005. Nine
28 computer hard-drives and eight loose hard drives, and 1,423 CDs and DVDs were seized. A

1 full computer forensic examination revealed 17,993 child pornography images. Moreover, 8,759 child pornography images, in some instances co-mingled with several obscene images, were found in 44 CDs. These images had been saved on the CDs before Defendant moved to Tucson, Arizona in March of 2004. Thus, the counts for Transportation and Shipping of Child Pornography (Counts 1 through 9) and the counts for Transportation of Obscene Material (Counts 10 through 24) both occurring from a time unknown to on or about May 11, 2005.

> "[T]ransactions" has a flexible meaning and ... the existence of a "series" depends upon the degree to which the events are related. Mere factual similarity of events will not suffice. Rather, there must be some greater "logical relationship" between the occurrences. Such a logical relationship may be shown by the existence of a common plan, scheme, or conspiracy.

*United States v. Sarkisian*, 197 F.3d 966, 976 (9th Cir. 1999)(*quoting United States v. Ford*, 632 F.2d 1354, 1371-72 (9th Cir. 1980), *overruled on other grounds, United States v. DeBright,* 730 F.2d 1255, 1259 (9th Cir. 1984) (en banc)); *United States v. Golb*, 69 F.3d 1417, 1425-26 (9th Cir. 1995). There is a logical connection between the offenses of Transportation and Shipping of Child Pornography and the offenses of Transportation of Obscene Material. The Transportation and Shipping of Child Pornography counts segue into the Transportation of Obscene Material counts.

### c.     Common Scheme or Plan

The aforesaid acts or transactions support a common scheme or plan: (1) the child pornography and obscene material were both received by Defendant in Minnesota; (2) the child pornography was subscribed and purchased in Minnesota by Defendant with his own credit cards; (3) the child pornography and the obscene material were both stored on CDs in Minnesota before Defendant moved to Tucson, Arizona in March of 2004; (4) the child pornography and the obscene material stored on CDs, were both transported in interstate commerce from Minnesota to Tucson, Arizona; (5) 44 CDs containing child pornography and obscene material were stored in cases found in Defendant's residence; (6) 8,759 images

1 of child pornography and images of obscene material were co-mingled on some of the same
2 CDs; (7) in addition, 17,250 images of child pornography were also found in the various
3 hard-drives seized by the Government under the search warrant served on May 11, 2005 at
4 Defendant's residence; (8) the aforementioned common scheme or plan demonstrates
5 Defendant's intent to amass and accumulate images of child pornography and not take
6 reasonable steps to destroy each visual depiction. *See* 18 U.S.C. §2252(c)(2)(A); and (9)
7 demonstrates Defendant's intent to amass and accumulate illicit images, whatever their form.

**2.     Severance**

9    A trial court has discretion under Rule 14 of the Federal Rules of Criminal Procedure
10 to sever offenses if joinder appears to prejudice a defendant. Fed.R.Crim.P. 14(a). Three
11 types of prejudice may result from joinder of offenses: (1) a defendant may become
12 embarrassed or confounded in presenting separate defenses; (2) proof of defendant's guilt
13 on one offense may "spill over" to convict him of a second offense even though such proof
14 would be inadmissible in a separate trial for the second offense; or (3) a defendant may wish
15 to testify in his own behalf on one of the offenses, but not another, forcing him to choose the
16 unwanted alternative of testifying as to both or testifying as to neither. *See United States v.
17 Jordan*, 112 F.3d 14, 16 (1st Cir. 1997). In dispelling prejudice, a trial court can properly
18 instruct the jury that guilt, if any, is to be decided on each count separately. *See United States
19 v. Nelson*, 137 F.3d 1094, 1108 (9th Cir. 1998).

20    The trial court may order separate trials of counts or provide any other relief that
21 justice requires. Fed.R.Crim.P. 14(a). The trial court must balance the interest of judicial
22 economy against the risk of prejudice to the defendant or the government. *United States v.
23 Pitner*, 307 F.3d 1178, 1181-82 (9th Cir. 2002). Joinder of offenses promotes judicial
24 economy and the risk of prejudice can be cured by proper instructions. *Zafiro*, 506 U.S. at
25 537, 540-41.

26    Prejudice from confusion or embarrassment to Defendant in presenting distinct
27 defenses to the offenses of Transportation and Shipping of Child Pornography and
28 Transportation of Obscene Material are cured by proper instruction to the jury. The

Defendant has not demonstrated the insufficiency of limiting instructions that would be given to the jury. *United States v. Joetzki*, 952 F.2d 1090, 1094 (9th Cir. 1991). Defendant is not required to nor is he qualified to testify regarding a First Amendment defense to the offenses of Transportation of Obscene Material. He need only consider testifying regarding Transportation and Shipping of Child Pornography.

### III. RECOMMENDATION

For the foregoing reasons, it is the recommendation of the Magistrate Judge that the District Court deny Defendant's Motion To Sever Counts/Motion *In Limine* To Preclude Evidence (Doc. 196).

Pursuant to 28 U.S.C. §636(b) and Rule 59(b)(2) of the Federal Rules of Criminal Procedure, any party may serve and file written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. If objections are filed, parties should use the following case number: **CR 07-1714-TUC-DCB**.

Failure to file objections in accordance with Fed.R.Crim.P. 59 will result in waivewr of right to review.

DATED this 18th day of October, 2010.

_____
Héctor C. Estrada
United States Magistrate Judge